## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

SHEENA FAMILIA
1949 Catoctin Terrace
Silver Spring, MD 20906

        Plaintiff

v.

MELVIN C. HIGH, in his official capacity
as the Prince George's County Sheriff
Serve:
Rhonda L. Weaver, County Attorney
Prince George's County Office of Law
1301 McCormick Drive
Suite 4100
Largo, MD 20774

and

PRINCE GEORGE'S COUNTY,
MARYLAND
Serve:
Rhonda L. Weaver, County Attorney
Prince George's County Office of Law
1301 McCormick Drive
Suite 4100
Largo, MD 20774

and

STATE OF MARYLAND
Serve:
Nancy K. Kopp, Maryland State Treasurer
State of Maryland Treasurer's Office
80 Calvert Street
Annapolis, MD 21401

        Defendants.

Case No. CAL 21-03452

Jury Trial Demanded

```
Case: CAL21-03452
NEW CASE
AFP FEE PLAIN        10.00
CV CLERK FEE-        88.00
MD LEGAL SERV        55.00
RIF - NEW CAS        30.00
TOTAL               175.00
Res# PG15    Rcpt # 85133
MEL   JCD    Blk # 1753
Mar 25, 2021        08:42 am
```

1

## COMPLAINT

Plaintiff Sheena Familia, through the undersigned counsel, sues Defendants the State of Maryland; Prince George's County, Maryland; and Melvin C. High in his official capacity as Sheriff of Prince George's County, for cause, claims damages, and in support thereof states as follows:

## PARTIES

1. Plaintiff Sheena Familia is an individual residing in Montgomery County, Maryland. She was formerly employed by the Prince George's County Sheriff's Office (the "Sheriff's Office").

2. Defendant Melvin C. High is the Sheriff of Prince George's County, the head of the Sheriff's Office, and an agent and decision-making employee of the State. He is sued here in his official capacity.

3. Defendant State of Maryland (the "State") employs County sheriffs and deputy sheriffs as state constitutional officers subject to the control of the Maryland General Assembly. *See Rucker v. Harford Cty.*, 316 Md. 275, 281, 558 A.2d 399 (1989). Among the County sheriffs' offices maintained by the State is the Prince George's County Sheriff's Office.

4. Defendant Prince George's County, Maryland (the "County") directs certain actions of Sheriff High and other officers of the Sheriff's Office. *See, e.g., Ritchie v. Donnelly*, 324 Md. 344, 357, 597 A.2d 432 (1991) (noting that "a sheriff may sometimes be treated as a state official and sometimes as a local official, depending upon the particular function which the sheriff was performing"); *Rucker*, 316 Md. at 281 (stating that "for some purposes and in some contexts, a sheriff may . . . be treated as a local government employee").

2

5. At all relevant times, Plaintiff was a dual employee of the State and the County, performing functions and carrying out duties for both the State and the County.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to Md. Code, Cts. & Jud. Proc. § 1-501.

7. Venue is proper in this Court pursuant to Md. Code, Cts. & Jud. Proc. § 6-201 because at least one Defendant resides in Prince George's County.

## NOTICE

8. On October 4, 2019, Plaintiff provided notice of a tort claim concerning these allegations to the Maryland State Treasurer pursuant to Md. Code, State Gov't § 12-106(b) and to the Prince George's County Attorney pursuant to Md. Code, Cts. & Jud. Proc. § 5-304(b).

## FACTS COMMON TO ALL COUNTS

9. On February 19, 2019, the Prince George's County Sheriff's Office, a hybrid agency of the State of Maryland and Prince George's County, hired Sheena Familia on probationary status as a Deputy Sheriff.

10. Ms. Familia had previously been employed by the University of Maryland Police Department, where she had an excellent performance record.

11. In April 2019, Ms. Familia was assigned to the Domestic Violence Unit ("DVU") of the Sheriff's Office.

12. Shortly after being assigned to the DVU, Ms. Familia began experiencing flashbacks to domestic violence incidents in her personal and family history. She also began to experience other psychosomatic symptoms, including insomnia, depression, and anxiety.

3

13. Ms. Familia became concerned about her mental health, and on May 4, 2019, she spoke with Sergeant Wiseman of the Sheriff's Office.

14. Sergeant Wiseman gave Ms. Familia contact information for the Prince George's County Employee Assistance Program (EAP), a County program designed to provide free confidential counseling and mental health services to County employees.

15. Ms. Familia immediately contacted the EAP. Stephanie Dominic, an EAP employee, referred Ms. Familia to a therapist, Patricia Spranger, LCSW-C, and set up an appointment for May 7, 2019.

16. Ms. Familia went to the appointment and met with Ms. Spranger. After discussing her symptoms and history, Ms. Spranger diagnosed Ms. Familia with post-traumatic stress disorder (PTSD).

17. Immediately after leaving her therapy session, Ms. Familia called Sergeant Wiseman and informed the Sergeant about her diagnosis.

18. Sergeant Wiseman expressed concern regarding Ms. Familia's ability to continue working in the Domestic Violence Unit in light of her diagnosis, and asked if Ms. Familia would consider returning to the University of Maryland, where Ms. Familia had been employed prior to joining the Sheriff's Office.

19. Ms. Familia told Sergeant Wiseman that she wanted to stay at the Sheriff's Office, and intended to get treatment for her PTSD and continue working where she was.

20. Sergeant Wiseman responded that Ms. Familia should inform Sergeant Stevenson and Lieutenant Whitmire, Ms. Familia's direct supervisors, about the diagnosis, and work with them toward a solution.

21. On May 7, 2019, Ms. Familia had a phone conversation with Sergeant Stevenson. She discussed her diagnosis, and informed Sergeant Stevenson that she had made an appointment with her primary care physician to discuss the diagnosis and her treatment options.

22. Sergeant Stevenson responded that he would meet with her and with Lieutenant Whitmire that evening. However, Sergeant Stevenson was not available, so Ms. Familia met with Lieutenant Whitmire alone.

23. Ms. Familia disclosed to Lieutenant Whitmire that she had been diagnosed with PTSD, and that she had an appointment with her primary care physician to form a treatment plan. Lieutenant Whitmire initially seemed supportive, sympathizing with Ms. Familia.

24. Ms. Familia then told Lieutenant Whitmire that she enjoyed working for the Sheriff's Office, believed herself to be a good officer, and did not want to quit.

25. Nevertheless, Lieutenant Whitmire asked Ms. Familia if she had considered finding other employment or returning to the University of Maryland. Lieutenant Whitmire stated that she "couldn't see how" Ms. Familia would be able to continue working as an officer without being fired or having her Maryland Police and Correctional Training Commission ("MPCTC") card flagged, threatening her certification as a police officer in the State of Maryland.

26. Ms. Familia reiterated that she had no desire to leave the Sheriff's Office, she just wanted to get help with her condition.

27. At no time did Defendants request an independent medical examination of Ms. Familia, or any other medical review of her condition, as is standard for evaluating the medical fitness of law enforcement officers. No healthcare provider has ever stated that Ms. Familia

would be medically unfit or precluded from performing the duties of a law enforcement officer, including a deputy sheriff.

28. Ms. Familia then requested that for her next shift, she be assigned work that did not involve responding to active domestic violence calls, so that she could go to the scheduled appointment with her physician before doing so.

29. As a probationary officer, Ms. Familia was required to "check off" having performed certain tasks to reach full-time officer (FTO) status. Among the items on her FTO checklist were several tasks that did not require responding to active calls, and which could be handled in the office.

30. Ms. Familia suggested to Lieutenant Whitmire that she use the time before her appointment to check off in-office FTO tasks.

31. Ms. Familia's request to perform tasks from her FTO checklist until she could go to her scheduled appointment was a request for a reasonable accommodation.

32. Lieutenant Whitmire responded that it "shouldn't be a problem" for Ms. Familia to do these tasks the following day. Lieutenant Whitmire noted in a memo that Ms. Familia had made the request and had informed her of the scheduled appointment.

33. Despite Lieutenant Whitmire's representations, when Ms. Familia reported for duty the following day, May 9, 2019, she was ordered to respond to a domestic violence call.

34. Ms. Familia sent a text message to Lieutenant Whitmire about the order, but when she did not receive a response, she prepared to respond to the call.

35. As Ms. Familia and another officer, Corporal Hardester, left the briefing area to respond to the call, they encountered Lieutenant Whitmire, who asked Ms. Familia if she was "good." Ms. Familia said she would be "fine" and that she would do her job as ordered.

6

36. Lieutenant Whitmire asked Ms. Familia to come to her office, which she did.

37. Lieutenant Whitmire then asked how Ms. Familia was doing; Ms. Familia responded again that she was "fine," to which Lieutenant Whitmire expressed concern about her and other officers' safety. Ms. Familia replied that, while it had been her understanding that she would not be responding to calls that evening, she planned to meet with her doctor the following day and would do her job in the meantime.

38. Lieutenant Whitmire then became frustrated, and told Ms. Familia that "you leave me no choice" and that "this is coming from above my head." When Ms. Familia asked what she meant, Lieutenant Whitmire printed and gave to Ms. Familia a letter from Captain Monica Jackson titled "Non-Disciplinary Emergency Suspension." The letter read:

> By order of Sheriff Melvin High, you are hereby advised that effective immediately, you are hereby suspended from your duties with the Prince George's County Sheriff's Office. Your law enforcement powers are suspended until further notice. Said suspension is with pay. All secondary employment that has been approved as a result of your being a law enforcement officer is revoked at this time. You will be placed on administrative leave until further notice.
>
> This suspension is being imposed as the result of your inability to fully perform your functions as a Deputy Sheriff.

39. Lieutenant Whitmire then handed Ms. Familia blank sheets of paper and instructed her to write a statement to the effect that she was unable to work due to her PTSD.

40. Ms. Familia questioned the need for a statement and repeated that she was still able to work. She declined to write a statement that was not true.

41. Lieutenant Whitmire told Ms. Familia that if she wanted to keep her job, she needed to write a statement. Eventually, Ms. Familia did so, writing that she was seeking medical attention that day and that "I want to be in this department . . . I am doing everything I can to get the help I need."

7

42. The following afternoon, May 10, 2019, Major Carr called Ms. Familia and asked her to come in as soon as she could. When Ms. Familia arrived, Major Carr asked her to explain what had happened.

43. After Ms. Familia did so, Major Carr asked if she had ever told Sergeant Stevenson that she was unable to perform her duties. Ms. Familia replied that she had never told anyone that she couldn't work, and had only requested that she not be required to respond to calls until she'd had a chance to see her primary care physician.

44. Major Carr responded that he wished that he'd had an opportunity to talk to her before that point, and handed Ms. Familia a letter signed by Prince George's County Sheriff Melvin High.

45. This letter, titled "FINAL NOTICE OF DISMISSAL – PROBATIONARY STATUS EMPLOYEE," informed Ms. Familia that her employment was 'terminated." It falsely stated that "On May 8th, you met with Sgt. Stevenson regarding your performance; at that meeting, you mentioned you were unable to perform your duties that are required to complete the program and fully serve as a Deputy Sheriff."

46. The letter also falsely stated that Ms. Familia had been "counseled prior to being assigned to the Domestic Violence Unit regarding your performance and informed of the potential consequences of continued negative performance."

47. Neither of the representations in the letter were true.

48. Ms. Familia never met with Sergeant Stevenson, only with Lieutenant Whitmire, and she repeatedly made it clear to Lieutenant Whitmire and others that she wanted to work at the Sheriff's Office and that she believed she could continue to perform her duties once she had a treatment plan in place.

8

49. Moreover, Ms. Familia was never told anything about any "negative performance" on her part, much less "informed of the potential consequences of continued negative performance."

50. At no time did the Sheriff's Office request an independent medical examination or communicate with Ms. Spranger, who made the original diagnosis, to determine the full nature of the diagnosis, the prognosis, and the impact on Ms. Familia's ability to discharge her duties as a sworn deputy sheriff. The only information the Sheriff's Office had came directly from Ms. Familia, who repeatedly told her supervisors that she could and would continue to perform her duties.

51. In fact, Ms. Familia was terminated because of the stigma of a potential PTSD diagnosis and the unknown specter of what the PTSD diagnosis might mean to her ability to discharge her duties—and not based upon any actual independent medical examination or even a review of medical records.

52. The inaccurate letter, and the falsehoods contained within it, were clearly meant to disguise the fact that Ms. Familia was terminated because she was diagnosed with PTSD.

53. After her termination, Ms. Familia sought employment as an officer with another department. She applied for a position with the Mount Rainer, Maryland Police Department ("MRPD"). v

54. Ms. Familia disclosed her PTSD diagnosis and treatment plan to the MRPD, as well as the events leading up to her departure from the Sheriff's Office. The MRPD had no trouble accommodating her disability, and she successfully worked at the MRPD until resigning for unrelated family reasons on June 23, 2020.

55. After being hired by the MRPD, Ms. Familia asked her new supervisors what her MPCTC profile showed as the reason for her discharge from the Sheriff's Office. Her supervisor informed her that the Sheriff's Office had listed Ms. Familia's reason for departure as "Resigned." Ms. Familia later confirmed that her MPCTC profile lists her as having "resigned" from the Sheriff's Office on May 10, 2019.

56. It appears that the Sheriff's Office falsely notified MPCTC that Ms. Familia resigned, when in fact she was terminated without justification.

57. Ms. Familia did not "resign" from the Sheriff's Office. She was unequivocally terminated. Sheriff High stated that "it is my final decision that [Ms. Familia's] employment with the [Sheriff's Office] is *terminated* effective close of business May 10, 2019."

58. On information and belief, the Sheriff's Office knowingly and falsely reported to the MPCTC that Ms. Familia had resigned in order to avoid creating a record of having terminated Ms. Familia because of her PTSD diagnosis.

59. Ms. Familia followed Sheriff's Office protocol by reaching out to the EAP, seeking treatment, and discussing the matter with her supervisors. When she did so, she was suspended almost immediately, and then pressured to make a false statement that would provide cover to the Sheriff's Office for her termination. When she refused to make such a statement, she was terminated anyway, and the false statements that she refused to make were simply attributed to her by others. After her termination, the Sheriff's Office attempted to conceal the true reason for her departure from the State of Maryland and other police departments by falsely notifying MPCTC that she "resigned," when in fact she was terminated without justification.

## COUNT I
### Americans with Disabilities Act – 42 U.S.C. § 12112

60. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

61. The Americans with Disabilities Act (ADA) defines a "disability" to include a "mental impairment that substantially limits one or more major life activities of [an] individual," including sleeping, concentrating, thinking, communicating, or working. 42 U.S.C. § 12102.

62. Ms. Familia's PTSD is such a mental impairment, and therefore qualifies as a disability under the ADA.

63. The ADA bars discrimination on the basis of disabilities, prohibiting the discharge or denial of employment opportunities and the refusal to make reasonable accommodations to "the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112.

64. The State and the County, through the Sheriff's Office, were Ms. Familia's joint employers at all relevant times.

65. Ms. Familia was otherwise qualified for her position. Indeed, she had been hired only a few months prior, indicating that the Sheriff's Office had reviewed her qualifications and found them adequate.

66. The Sheriff's Office made no effort whatsoever to make reasonable accommodations for Ms. Familia's disability, despite her repeated statements that she wanted to remain employed and her repeated requests for a brief reassignment until she could obtain healthcare.

67. Instead, the Sheriff's Office terminated Ms. Familia less than three days after learning of her disability, using a nonexistent meeting with Sergeant Stevenson and false

11

allegations of "negative performance" as a pretext for the firing, which was in truth motivated by her disability. Indeed, the Sheriff's Department terminated Ms. Familia because of the stigma of PTSD and the potential limitations of PTSD without ever conducting an independent medical examination or obtaining any information about her actual diagnosis, its potential treatment, and any potential restrictions or limitations arising from her diagnosis.

68. The Sheriff's Office's discharge of Ms. Familia therefore violated the ADA.

69. As a result of Defendants' ADA violation, Ms. Familia suffered damages, including but not limited to mental and emotional distress, loss of income, loss of reputation and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants Melvin C. High in his official capacity as Sheriff of Prince George's County, the State of Maryland, and Prince George's County, Maryland, for monetary damages, together with interest, costs, and attorney's fees of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, and such other and further relief as the nature of the case may require and that this Honorable Court shall deem just and proper.

## COUNT II
**Maryland Human Relations Act – Md. Code, State Gov't § 20-601 *et seq.***

70. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

71. The Maryland Human Relations Act defines a "mental impairment or deficiency" as a disability, Md. Code, State Gov't § 20-601(b)(2), and prohibits discharging employees on the basis of any disability that does not "reasonably preclude the performance of the employment," Md. Code, State Gov't § 20-606(a)(1)(i).

72. The State and the County, through the Sheriff's Office, were Ms. Familia's joint employers at all relevant times.

73. Apart from her PTSD, Ms. Familia was otherwise qualified for her position and performed her work adequately.

74. A reasonable accommodation would have allowed Ms. Familia to perform all essential functions of her job.

75. Ms. Familia requested a reasonable accommodation by asking to perform FTO checklist tasks prior to her medical appointment.

76. The Sheriff's Office made no effort whatsoever to make reasonable accommodations for Ms. Familia's disability, despite her repeated statements that she wanted to remain employed and her repeated requests for a brief reassignment until she could obtain healthcare.

77. Instead, the Sheriff's Office terminated Ms. Familia because of her PTSD, using a nonexistent meeting with Sergeant Stevenson and false allegations of "negative performance" as a pretext for the firing.

78. The Sheriff's Office's discharge of Ms. Familia therefore violated the Maryland Human Relations Act.

79. As a result of Defendants' violation, Ms. Familia suffered damages, including but not limited to mental and emotional distress, loss of income, loss of reputation and economic damages.

80. On or about May 15, 2019, Ms. Familia filed a Notice of Appeal of her termination with the Prince George's County Personnel Board. That appeal remains ongoing.

81. On or about June 19, 2019, Ms. Familia filed a Charge of Discrimination against the Sheriff's Office with the United States Equal Opportunity Employment Commission.

82. More than 180 days have elapsed since the filing of Ms. Familia's Notice of Appeal and Charge of Discrimination.

83. On March 3, 2021, Ms. Familia received a Notice of Right to Sue Within 90 Days from the Department of Justice in relation to her EEOC claim.

WHEREFORE, Plaintiff demands judgment against Defendants Melvin C. High in his official capacity as Sheriff of Prince George's County, the State of Maryland, and Prince George's County, Maryland, for monetary damages, together with interest, costs, and attorney's fees of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, and such other and further relief as the nature of the case may require and that this Honorable Court shall deem just and proper.

## COUNT III
**Prince George's County Human Relations Act – Prince George's County Code § 2-222**

84. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

85. The Sheriff's Office is located, and the actions alleged herein occurred, in Prince George's County, Maryland.

86. Prince George's County Code § 2-222 states that an employer in Prince George's County shall not "discharge . . . or act against any person with respect to compensation or other terms and conditions of employment . . . because of discrimination." This includes discrimination on the basis of a "physical or mental handicap." Prince George's County Code § 2-185(a).

87. The State and the County, through the Sheriff's Office, were Ms. Familia's joint employers at all relevant times.

88. The Sheriff's Office terminated Ms. Familia because of her PTSD in violation of Prince George's County Code.

89. As a result of Defendants' violation, Ms. Familia suffered damages, including but not limited to mental and emotional distress, loss of income, loss of reputation and economic damages.

90. On or about June 19, 2019, Ms. Familia filed a Charge of Discrimination against the Sheriff's Office with the United States Equal Opportunity Employment Commission.

91. On March 3, 2021, Ms. Familia received a Notice of Right to Sue Within 90 Days from the Department of Justice in relation to her EEOC claim.

WHEREFORE, Plaintiff demands judgment against Defendants Melvin C. High in his official capacity as Sheriff of Prince George's County, the State of Maryland, and Prince George's County, Maryland, for monetary damages, together with interest, costs, and attorney's fees of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, and such other and further relief as the nature of the case may require and that this Honorable Court shall deem just and proper.

## COUNT IV
### Wrongful Discharge

92. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

93. The State and the County, through the Sheriff's Office, were Ms. Familia's joint employers at all relevant times.

94. The Sheriff's Office discharged Ms. Familia on May 10, 2019.

95. The Sheriff's Office terminated Ms. Familia because of her PTSD, using a nonexistent meeting with Sergeant Stevenson and false allegations of "negative performance" as a pretext for the firing.

96. Terminating an employee in response to a PTSD diagnosis violates a clear mandate of public policy against disability discrimination, as set forth by the ADA, the Maryland Human Relations Act, and the Prince George's County Human Relations Act.

97. As a result of Defendants' wrongful termination, Ms. Familia suffered damages, including but not limited to mental and emotional distress, loss of income, loss of reputation and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants Melvin C. High in his official capacity as Sheriff of Prince George's County, the State of Maryland, and Prince George's County, Maryland, for monetary damages, together with interest, costs, and attorney's fees of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, and such other and further relief as the nature of the case may require and that this Honorable Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial as to all issues of fact and counts so triable.

Timothy F. Maloney

Respectfully Submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

By: *[signature: Timothy F. Maloney]*
Timothy F. Maloney, CPF #8606010245
tmaloney@jgllaw.com
Nicholas N. Bernard, CPF #2001220048
nbernard@jgllaw.com
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 (tel.)
(301) 220-1214 (fax)
*Counsel for Plaintiff*

17