## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SHEENA FAMILIA,

    Plaintiff,

    v.

MELVIN C. HIGH, *in his official capacity as the Prince George's County Sheriff and in his individual capacity*,
PRINCE GEORGE'S COUNTY,
MARYLAND and
STATE OF MARYLAND,

    Defendants.

Civil Action No. TDC-21-1139

## MEMORANDUM OPINION

Plaintiff Sheena Familia has filed this civil action against the State of Maryland ("the State"); Prince George's County, Maryland ("the County"); and Melvin C. High in his individual capacity and in his official capacity as the Sheriff of Prince George's County, alleging unlawful employment discrimination based on disability in violation of federal, state, and local anti-discrimination laws and the tort of wrongful discharge. Pending before the Court are two Motions filed by Defendants: (1) the County's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; and (2) a Partial Motion to Dismiss filed by the State and Sheriff High (collectively, "the State Defendants"). Both are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the County's Motion will be GRANTED IN PART and DENIED IN PART, and the State Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.   Termination

On February 19, 2019, Familia was hired by the Prince George's County Sheriff's Office ("the Sheriff's Office") as a deputy sheriff. Beginning in April 2019, she was assigned to the Domestic Violence Unit of the Sheriff's Office. While in that assignment, she began to have flashbacks to previous incidents of domestic violence from her personal life and to experience symptoms such as insomnia, depression, and anxiety. Familia became concerned for her mental health and spoke with Sergeant Wiseman of the Sheriff's Office on May 4, 2019. Sgt. Wiseman provided Familia with contact information for the Prince George's County Employee Assistance Program, which provides free, confidential counseling and mental health services to County employees. After contacting the program, Familia was referred to a therapist, Patricia Spranger, who diagnosed her with post-traumatic stress disorder ("PTSD") on May 7, 2019. Spranger concluded that Familia's PTSD derived from her past experience with domestic violence and was triggered by her exposure to domestic violence calls while assigned to the Domestic Violence Unit.

Immediately after that session, Familia informed Sgt. Wiseman of the diagnosis. Sgt. Wiseman expressed concern about Familia's ability to continue working in the Domestic Violence Unit and asked if she would consider returning to her previous employment as a police officer at the University of Maryland, to which Familia responded that she wanted to seek PTSD treatment and to continue working at the Sheriff's Office. Sgt. Wiseman then informed Familia that she should contact her direct supervisors, Sergeant Stevenson and Lieutenant Whitmire, and work with them to find a solution. That same day, May 7, 2019, Familia informed Sgt. Stevenson of her diagnosis and explained that she planned to discuss treatment options with her primary care physician. Sgt. Stevenson advised that he and Lt. Whitmire would meet with Familia.

2

At the time of their scheduled meeting on May 8, 2019, Sgt. Stevenson was unavailable, so Familia met with Lt. Whitmire only. Familia informed Lt. Whitmire of her diagnosis and her plan to work with her primary care physician to seek treatment. Lt. Whitmire asked Familia if she had considered finding other employment, as she "couldn't see how" Familia could continue working as a deputy sheriff without risking her certification as a police officer. Am. Compl. ¶ 35, ECF No. 29. Familia responded that she wished to remain with the Sheriff's Office and requested a change in assignment for her next shift so that she would not have to respond to active domestic violence calls before she could see her physician and discuss further reasonable accommodations she might need. Whitmire responded that it "shouldn't be a problem" for Familia to perform different tasks the next day. *Id.* ¶ 42.

However, when Familia reported for duty the following day, she was ordered to respond to an active domestic violence call. Familia sent a text message to Lt. Whitmire about the order but did not receive a response. As a result, Familia prepared to respond to the call. As she was leaving, she encountered Lt. Whitmire, who asked if she was "good," to which Familia responded that she would be fine and would do her job. *Id.* ¶ 45. Lt. Whitmire then requested that Familia meet with her in her office. After Lt. Whitmire expressed concern about Familia and other officers' safety, Familia responded that though she had understood that she would not have to respond to domestic calls until after she met with her physician the next day, she would do her job in the meantime. Lt. Whitmire then became frustrated and informed Familia that "you leave me no choice," and that "this is coming from above my head." *Id.* ¶ 48. She gave Familia a letter from Captain Monica Jackson entitled "Non-Disciplinary Emergency Suspension." *Id.* The letter advised Familia that "effective immediately, you are hereby suspended from your duties with the Prince George's County Sheriff's Office," and that the suspension with pay was being imposed

3

"as the result of your inability to fully perform your functions as a Deputy Sheriff." *Id.* Lt. Whitmire instructed Familia to write a statement about her inability to work due to PTSD, but Familia declined to do so, stating that she could still work provided she received accommodations. Lt. Whitmire told Familia that if she wanted to keep her job, she needed to write a statement. As a result, Familia wrote that she was seeking medical attention and that "I want to be in this department . . . I am doing everything I can to get the help I need." *Id.* ¶ 51.

The following day, May 10, 2019, Major Carr asked Familia to meet with him and explain the previous day's events. After Familia described those events, Major Carr asked if Familia had previously informed Sgt. Stevenson that she was unable to perform her duties. Familia replied that she had never stated that she could not work, but that she had requested an accommodation that she not be required to respond to active domestic violence calls until after she met with her physician. Major Carr responded that he wished that he had had an opportunity to talk to Familia before that point, then handed Familia a letter signed by Sheriff High. The letter was entitled "FINAL NOTICE OF DISMISSAL – PROBATIONARY STATUS EMPLOYEE" and informed Familia that her employment was "terminated." *Id.* ¶ 55. The letter asserted to Familia that at a May 8, 2019 meeting with Sgt. Stevenson, "you mentioned you were unable to perform your duties that are required to complete the program and fully serve as a Deputy Sheriff." *Id.* The letter also stated that Familia had been "counseled prior to her being assigned to the Domestic Violence Unit regarding [her] performance and informed of the potential consequences of continued negative performance." *Id.* ¶ 57. According to Familia, both of these statements were false.

After her termination, Familia was hired by the Police Department of Mount Rainier, Maryland, which provided her with accommodations for her disability. When she later requested

a "letter of good standing" from the Sheriff's Office to be used in an application for another job, Sheriff High refused to provide one. *Id.* ¶ 71.

## II.    Procedural History

On May 15, 2019, Familia filed a Notice of Appeal of her termination from the Sheriff's Office with the Prince George's County Personnel Board. On June 19, 2019, Familia, filed a self-represented charge of discrimination against the "Prince George's County Sheriff's Office" with the United States Equal Employment Opportunity Commission ("EEOC") and the Prince George's County Office of Human Rights. *Id.* ¶ 14. On October 4, 2019, Familia sent by certified mail, return receipt requested, a notice of a tort claim to the Maryland State Treasurer and to the Prince George's County Attorney.

On March 23, 2021, Familia filed the instant action. In the Amended Complaint filed on August 23, 2021, Familia asserts five causes of action based on alleged disability discrimination in employment, numbered as follows: (1) a claim against the County under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (2018); (2) an ADA claim against Sheriff High in his official capacity as Prince George's County Sheriff; (3) a claim against the County and the State under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–606 (LexisNexis 2021); (4) a claim against the County and the State under the Prince George's County Human Relations Act ("PGCHRA"), Prince George's County, Md. Code § 2-222 (Supp. 2021); (5) a claim against the County, the State, and Sheriff High in his individual capacity for the common law tort of wrongful discharge; and (6) a claim against the County and the State under the Rehabilitation Act, 29 U.S.C. § 794 (2018).

## DISCUSSION

The County has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Separately, the State Defendants have filed a Partial Motion to Dismiss. The Court will address the two Motions in turn.

Both Motions seek dismissal under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## I.    The County's Motion

In its Motion, the County seeks dismissal or summary judgment on the grounds that (1) Familia failed to provide notice to the County of the claims in Counts 3, 4, and 5, as required by the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. §§ 5–301 to 5–304 (LexisNexis 2020); (2) Familia failed to exhaust administrative remedies relating to Counts 1, 3, 4, and 6 as required by the ADA, the MFEPA, the PGCHRA, and the Rehabilitation Act; (3) Familia failed to state a plausible claim for wrongful discharge, as asserted in Count 5; and (4) all claims against the County fail because the County was not Familia's employer during the events in question and thus cannot be found liable under any of the asserted causes of action.

6

As a threshold issue, the County filed its Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and submitted exhibits in support of the Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, the County has attached to its Motion the EEOC charge of discrimination ("the Charge") that Familia filed against the Sheriff's Office. *See* EEOC Charge, County Mot. Ex. 3, ECF No. 35-6. Where the Complaint specifically referenced the filing of the Charge, and Familia does not challenge the document's authenticity, the Court will consider the Charge in deciding the County's Motion.

However, the County has also attached several other exhibits to its Motion. Rule 12(d) requires courts to treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56 when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

7

The notice requirement has been satisfied by the title of the County's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Here, Familia has submitted a Rule 56(d) affidavit asserting that further factual development is necessary before resolving the issues of whether Familia properly provided notice of her state law claims to the County, whether the County received notice of the Charge prior to this litigation, and whether the County was an employer of Familia and therefore liable for her claims. White Aff. ¶¶ 5-8, 13-17, ECF No. 38. Because the Rule 56(d) affidavit properly asserts Familia's need for discovery on several of the County's arguments, the Court will treat the County's Motion as a Motion to Dismiss only.

### A.      LGTCA Notice

As grounds for dismissal of the MFEPA, PGCHRA, and wrongful discharge claims asserted against it, the County contends that Familia failed to comply with the notice requirement of the LGTCA. Under the LGTCA, a local government in Maryland is liable "for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code Ann., Cts. & Jud. Proc. § 5–303(b)(1). The LGTCA conditions such tort liability on compliance with a notice requirement, which provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." *Id.* § 5–304(b)(1). This requirement applies to a state law tort claim for unliquidated damages, including claims for violations of state statutes such as the

8

MFEPA. *See Hansen v. City of Laurel*, 25 A.3d 122, 124 n.3, 129-30 (Md. 2011) (applying the LGTCA notice requirement to statutory disability discrimination claims); *see also Morey v. Carroll Cnty.*, No. ELH-17-2250, 2018 WL 2064782, at *20 (D. Md. May 3, 2018) ("Plaintiff may bring an employment discrimination claim under MFEPA . . . provided that plaintiff furnished the requisite notice, as required by the Local Government Tort Claims Act."). Written notice must be provided "in person or by certified mail, return receipt requested," state the "time, place, and cause of the injury," and in the case of Prince George's County, must be provided to the county solicitor or county attorney. Md. Code Ann., Cts. & Jud. Proc. § 5–304(b)(2), (c)(1), (c)(3)(iii). The purpose of the requirement is to provide the local government with notice at a time when it can conduct its own investigation of the incident while the evidence is still fresh so as to ascertain the character and extent of the injury and the responsibility the local government may have for it. *See Rios v. Montgomery Cnty.*, 872 A.2d 1, 14 (Md. 2005). The notice requirement of the LGTCA is a condition precedent to maintaining a tort action, so a plaintiff is required to plead compliance with that requirement. *Hansen*, 25 A.3d at 137.

Here, Familia has satisfied the pleading requirement. Her Amended Complaint states that on October 4, 2019, she "provided notice of a tort claim concerning these allegations . . . to the Prince George's County Attorney pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5–304(b) via certified mail with return receipt requested" and that the letter was "confirmed to have been delivered." Am. Compl. ¶ 16.

Though the County states that it did not receive the alleged notice, it relies on an affidavit from a County official attached to its Motion to support this assertion. Even if the Court were to consider it, Familia's Rule 56(d) affidavit states that Familia's counsel "is in possession of a signed return receipt from the successful delivery" of the required notice. White Aff. ¶ 8. Where Familia

has properly pleaded that she provided notice under the LGTCA, and discovery is required to resolve the question of whether such notice was actually provided, the Court will deny the County's Motion on the issue of LGTCA notice.

### B.    Exhaustion of Administrative Remedies

The County also argues that the ADA, MFEPA, PGCHRA, and Rehabilitation Act claims against it in Counts 1, 3, 4, and 6 must be dismissed because Familia failed to properly exhaust administrative remedies prior to filing suit. Specifically, the County asserts that exhaustion was not proper because although it is undisputed that Familia filed an EEOC charge of discrimination, Familia named the Sheriff's Office, not the County, as her employer in the Charge, which resulted in the County "not being notified of [her] allegations and . . . not being able to participate in the administrative process." County Mot. Dismiss at 15, ECF No. 35-2.

At the outset, the Court notes that the Rehabilitation Act and PGCHRA claims may not be subject to exhaustion requirements. *See Costabile v. N.Y.C. Health & Hosp. Corp.*, 951 F.3d 77, 81-82 (2d Cir. 2020) (stating that there is no statutory basis on which to conclude that a plaintiff pursuing a Rehabilitation Act claim against a federal grantee, rather than a federal agency, must exhaust administrative remedies); *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (same); *Magness v. Harford Cnty.*, No. ELH-16-2970, 2018 WL 1505792, at *15 (D. Md. Mar. 27, 2018) (same) (collecting cases); Prince George's County, Md. Code § 2-200 (authorizing suit without discussion of administrative exhaustion requirements). Nevertheless, because the parties do not differentiate among Familia's statutory claims in discussing exhaustion, the Court will address them together.

Congress modeled the ADA on Title VII and incorporated its enforcement remedies and procedures into the ADA. 42 U.S.C. § 12117(a); *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th

Cir. 2012). Before filing a federal lawsuit under Title VII or the ADA, a plaintiff must first exhaust administrative remedies by filing and pursuing a charge with the EEOC. *See* 42 U.S.C. §§ 2000e-5(b), (f), 12117(a); *Sydnor*, 681 F.3d at 593. The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The EEOC charge must contain allegations "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b) (2004)). A similar requirement exists for claims under the MFEPA. *See* Md. Code Ann., State Gov't § 20–1013(a) (requiring the filing of a "timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent"); *Cohen v. Montgomery Cnty. Dep't of Health & Human Servs.*, 817 A.2d 915, 921, 925-26 (Md. Ct. Spec. App. 2003) (relying on ADA case law in evaluating exhaustion under the MFEPA).

The County's argument fails for two reasons. First, Familia's filing of the Charge against "the Prince George's County Sheriff's Office" was sufficient to satisfy the exhaustion requirement. EEOC Charge at 1. A plaintiff is required to have filed an EEOC charge against the defendant "to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints." *Alvarado v. Bd. of Tr.*, 848 F.2d 457, 460 (4th Cir. 1988). However, this rule "does not require procedural exactness from lay complainants: 'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *Id.* (quoting *Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)). In *Alvarado*, the United States Court of Appeals for the Fourth Circuit held that a plaintiff satisfied this naming requirement when he filed a self-represented EEOC charge of discrimination against "Montgomery Community College," the institution at which he worked,

11

even though his federal lawsuit filed through counsel named as the defendant "The Board of Trustees of Montgomery Community College," the appropriate defendant for such a claim pursuant to state statute. *Id.* at 460. The court found that it was "not reasonable to have expected" the plaintiff to know the statutorily appropriate entity to be sued and that to dismiss the case based on the discrepancy would constitute the application of "a common-sense requirement in a hypertechnical fashion." *Id.* at 458, 460. Familia, like the plaintiff in *Alvarado*, named in the Charge the entity "where [s]he worked," and her description of that entity—"Prince George's County Sheriff's Office"—was sufficiently precise to identify the party and explicitly note its affiliation with the County. *See id.* at 460; *see also Chacko*, 429 F.3d at 508. That there is a mismatch between the party named in the Charge and the parties in this litigation is a result of the unique complications surrounding the legal status of sheriff's offices in Maryland, which is itself at issue in this suit, and not an issue that Familia can reasonably be expected to have resolved on her own. *See infra* part I.D. The Court therefore finds that Familia sufficiently identified her employer in the EEOC Charge.

Second, the Court is not persuaded by the County's argument that it was prejudiced in the administrative proceedings by Familia's failure to name the County because it did not receive actual notice of those proceedings while they were ongoing. Whether the County received actual notice is a factual issue that, as discussed above, the Court will not resolve without discovery. *See supra* part I; White Aff. ¶¶ 13. Even if the Court were to consider the exhibits attached to the County's Motion, they support the conclusion that the County received actual notice because they reveal that the EEOC sent the Charge to an equal employment opportunity official with a Prince George's County Government email address.

Finally, even if the County is deemed to be a party entirely unnamed in the EEOC Charge, the Court would apply the "substantial identity" exception to the naming requirement, which permits a plaintiff to bring suit against a defendant where "there is substantial, if not complete identity of parties before the EEOC and the court." *Alvarado*, 848 F.2d at 461 (quoting *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981)). Factors to be considered in making this assessment include (1) "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint"; (2) "whether, under the circumstances, the interest[s] of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings"; (3) "whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party"; and (4) "whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Crosten v. Kamauf*, 932 F. Supp. 676, 682 (D. Md. 1996). The second and third factors are most important. *Id.*

None favor the County. As discussed above, the Court finds that it would be unreasonable to have expected Familia to engage in legal research sufficient to identify the County as the proper defendant, as opposed to the "Prince George's County Sheriff's Office" or the State of Maryland, when the proper defendant remains an issue in dispute in this case. *See infra* part I.D. The County has acknowledged that the State responded to the EEOC Charge, and the Court finds that for purposes of conciliation, the interests of the State in arguing against the claim of discrimination at the Sheriff's Office were sufficiently similar to the County's interests such that it would be unnecessary to include the County in those proceedings. As for the last two factors, the County has not demonstrated actual prejudice from not being named in the EEOC Charge and has not

13

claimed that it ever informed Familia that the County was the legal entity to which she should address employment disputes such as discrimination complaints or lawsuits.

For all of these reasons, the Court will deny the Motion on the issue of failure to exhaust administrative remedies.

### C. Wrongful Discharge

The County seeks dismissal of the claim against it in Count 5 on the ground that Familia has failed to state a valid wrongful discharge claim. Under Maryland law, the tort of wrongful discharge allows an at-will employee to assert a claim for abusive or wrongful discharge against the employer if the termination violated a clear mandate of public policy. *Porterfield v. Mascari II, Inc.*, 823 A.2d 590, 602 (Md. 2003) (citing *Adler v. American Standard Corp.*, 432 A.2d 464, 467 (Md. 1981)). To succeed on such a claim, a plaintiff must establish that (1) the employee was discharged; (2) the alleged basis for discharge violated some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the decision to fire the employee. *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002). Here, Familia has alleged that her termination violated a clear mandate of public policy against disability discrimination as set forth in the ADA, the MFEPA, and the PGCHRA.

These statutes, however, cannot provide the basis for a wrongful discharge claim because wrongful discharge "will not lie if [a] statute provides a civil remedy that would render relief via a wrongful discharge action duplicative." *Porterfield*, 823 A.2d at 603. When a statute creates a right and remedy for enforcing an exception to at-will employment, the "generally accepted reason for recognizing the tort [of wrongful discharge], that of vindicating an otherwise civilly unremedied public policy violation, does not apply." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 190 (Md. 1989). In *Makovi*, an employee brought claims of discriminatory termination based

on sex under Title VII, the MFEPA, and the tort of wrongful discharge. *Id.* at 179-80. The Court of Appeals of Maryland held that the employee could not bring a wrongful discharge claim because the employment statutes provided both a right to challenge and a remedy for her termination, and a wrongful discharge claim is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Id.* at 180, 190.

Here, as in *Makovi*, Familia's wrongful discharge claim cannot proceed because her alleged sources of the public policy mandate, the ADA, the MFEPA, and the PGCHRA, all provide for civil damages to remedy violations of this mandate. *See* 42 U.S.C. §§ 12117(a), 1981a(a)(2) (ADA); Md. Code Ann., State Gov't § 20–1013(d) (MFEPA); Prince George's County, Md. Code § 2-200 (PGCHRA). Tellingly, Familia has separately asserted claims against the County under each of these statutes in Counts 1, 3, and 4, thus confirming that "relief via a wrongful discharge action [would be] duplicative." *Porterfield*, 823 A.2d at 603.

Familia's argument in her brief that her discharge violated a separate mandate of public policy, one prohibiting employers from interfering with state employees' engagement in administrative or legal action relating to their employment, fares no better. As the source of this mandate, Familia cites a state statute providing that:

> During any stage of a State employee's complaint, grievance, or other administrative or legal action that concerns State employment, the employee may not be subjected to coercion, discrimination, interference, reprisal, or restraint by or initiated on behalf of the employer solely as a result of that employee's pursuit of the grievance, complaint, or action.

Md. Code Ann., State Pers. & Pens. § 2–305(b) (LexisNexis 2015). Even if Familia is correct that this provision does not provide a civil remedy, it is nevertheless inapplicable to her claim. In the Amended Complaint, Familia specifically alleges that the wrongful discharge was "in response to

a PTSD diagnosis" and in violation of the "clear mandate of public policy against disability discrimination," Am. Compl. ¶ 124, and never alleges that she was terminated because she pursued a "complaint, grievance, or other administrative or legal action that concerns State employment." Md. Code Ann., State Pers. & Pens. § 2–305(b).  She may not amend the complaint through an argument in her brief in opposition to a motion to dismiss.  *See State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 573 (D. Md. 2019).  Even if Familia were permitted to advance such a claim, it is not supported by the detailed allegations in the Amended Complaint, which likewise make no mention of any complaint, grievance, or legal action by Familia prior to her termination and instead unmistakably describe events that, if true, support the claim that she "was terminated because of her disability" and "because she was diagnosed with PTSD."  Am. Compl. ¶¶ 59-60.  Where Familia has failed to state a plausible claim of wrongful discharge, the Court need not address the County's separate argument for dismissal, that Familia was not an at-will employee.  The Motion will be granted as to Count 5.

### D.    Joint Employer

On the merits, the County argues that all of the claims against it must be dismissed because the County is not the proper defendant.  Specifically, the County asserts that the Sheriff's Office is a state agency and that, as a result, "the County is not the employer of the Sheriff or [Familia.]" County Mot. Dismiss at 10.  Familia counters that she has alleged that the County and State were joint employers and that resolution of whether the County is liable as Familia's employer is a fact-intensive inquiry that cannot be resolved at this early stage.  Because the Court has determined that Count 5 will be dismissed for failure to state a claim, it will address this issue only as to Counts 1, 3, 4, and 6.

16

The Fourth Circuit has recognized the joint employer doctrine for employment discrimination suits, under which "multiple entities may simultaneously be considered employers" for purposes of liability. *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015); *see Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (applying the doctrine to the ADA). The test for determining whether an individual is jointly employed by two or more entities is "highly fact-specific" and requires consideration of nine factors. *Butler*, 793 F.3d at 410, 414. The "principal guidepost" in this analysis is "whether an entity exercises control over an employee to the extent that it should be liable." *Id.* at 410, 415.

The County does not dispute the applicability of this doctrine but instead argues that as a matter of law, deputy sheriffs are employees of the State, not of the relevant county. Under Maryland law, sheriffs and deputy sheriffs are generally treated as state officials or employees. *Rucker v. Harford Cnty.*, 558 A.2d 399, 406 (Md. 1989). For example, "a sheriff or deputy sheriff of a county" falls under the category of "state personnel" for purposes of liability under the Maryland Tort Claims Act. Md. Code Ann., State Gov't § 12–101(a)(6). However, in *Rucker*, the Maryland Court of Appeals also recognized that "for some purposes and in some contexts," a sheriff may be treated as a local government employee, including in matters related to local funding, benefits, and pension plans. 558 A.2d at 406; *cf. Dotson v. Chester*, 937 F.2d 920, 926-28 (4th Cir. 1991) (discussing *Rucker* and state and local laws in evaluating liability under 42 U.S.C. § 1983 and concluding that "the Sheriff is not always a state employee or always a county employee" but "may, on occasion, be both, or sometimes one and sometimes the other"). Specifically, state law provides that deputy sheriffs in Prince George's County "shall be subject to the county personnel law," including "the Labor Code of the county with regard to collective bargaining for . . . terms and conditions of employment." Md. Code Ann., Cts. & Jud. Proc. § 2–

330(g)(1), (g)(3)(i). The costs and expenses, including the salaries, associated with deputy sheriffs are also provided for "in the budget of the county." *Id.* § 2–330(e)(1). The Prince George's County Code further affirms that deputy sheriffs "shall be subject to the Personnel Law" of the County "as to qualifications, compensations and other regulations," Prince George's County, Md. Code § 18-107, and the County's personnel law includes an equal employment opportunity provision that makes it "wrongful and illegal" for a supervisor to take "discriminatory action," *id.* § 16-109(a). These authorities highlight that the question of liability in employment discrimination claims relating to Sheriff's Office personnel is not easily answered by state law. Significantly, the Maryland Court of Appeals has explicitly stated that it has not resolved the question of whether sheriffs and deputy sheriffs are to be classified as state or local government employees for purposes of issues arising under federal law. *Rucker*, 558 A.2d at 401-02. Thus, as to Familia's federal claims under the ADA and the Rehabilitation Act, Maryland state law is even less conclusive on the issue of employer liability.

Under these circumstances, judges in this District have concluded that on the issue of whether a county can be held liable for employment discrimination at a Sheriff's Office, the joint employer doctrine applies, and the "degree of control exercised by the County over employees of the Sheriff's Department is a factual issue that is not fully described by the applicable statutes and ordinances," many of which vary by county in Maryland. *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 727 & n.27 (D. Md. 2013); *see also Ensor v. Jenkins*, No. ELH-20-1266, 2021 WL 1139760, at *46 (D. Md. Mar. 25, 2021) (denying a motion to dismiss Frederick County as a defendant in a case asserting employment discrimination at the Frederick County Sheriff's Office because more factual development was necessary to make the joint employer determination); *cf. Jackson v. Mayor & City Council of Balt. City*, No. JFM-08-3103, 2009 WL 2060073, at *3, *7

18

(D. Md. July 14, 2009) (holding that under the Fair Labor Standards Act's four-prong "economic reality" test for whether there was an employer-employee relationship, there was "sufficient evidence" to establish that Baltimore City was the employer of dispatchers at the Baltimore City Sheriff's Office).

Because the determination of whether the County can be held liable as a joint employer of Familia is not properly resolved as a matter of law, the Court focuses on the Amended Complaint, which asserts that Familia was "jointly employed by the State and the County, performing functions and carrying out duties for both." Am. Compl. ¶ 6. Among other allegations in support of this claim, Familia contends that the County "directs certain actions of Sheriff High and other officers of the Sheriff's Office, including, but not limited to personnel actions, and uses County resources and facilities to provide administrative and other services to the Sheriff's Office." *Id.* ¶ 4. Familia also asserts that her W-2 form listed her employer as the County, that the County's Office of Human Resources Management "oversees all personnel actions related to deputy sheriffs," and that the New Employee Handbook provided to Familia at orientation specifically stated that the orientation program was "designed to familiarize new employees with the Prince George's County Government" and "assist new employees with their transition into County Government." *Id.* ¶ 5. Notably, Familia appealed her termination to the County's Personnel Board. Viewed in the light most favorable to the nonmoving party, these allegations are sufficient to support Familia's claim that the County was, at a minimum, a joint employer.

Though the County argues that the Sheriff is a state employee and has "total control over the firing and hiring of its employees and daily supervision," County Reply at 5, ECF No. 45, Familia's Rule 56(d) affidavit asserts that she lacks relevant discovery necessary to determine the extent of the County's involvement in personnel relations at the Sheriff's Office. In light of the

19

sufficiency of Familia's allegations, the assertions in the Rule 56(d) affidavit, and the fact-intensive inquiry typical for joint employer determinations, the Court finds that it cannot at this point conclude as a matter of law that the County was not a joint employer of Familia for purposes of the employment decisions at issue. The Court therefore declines to dismiss any claims against the County on this basis.

## II.    The State Defendants' Motion

In their Partial Motion to Dismiss, the State Defendants argue that (1) the claim in Count 4 against the State must be dismissed because Familia may not assert a claim against the State for a violation of the PGCHRA; and (2) the claim in Count 5 against Sheriff High must be dismissed because he is statutorily immune from a tort claim for wrongful discharge.

### A.    PGCHRA

In Count 4, Familia asserts an employment discrimination claim for a violation of the Prince George's County Human Relations Act, Prince George's County, Md. Code § 2-222, against the County and the State. The State argues that it cannot be sued for an alleged violation of the PGCHRA because it is not a "person" against whom suit is authorized. Under a Maryland statute applicable to Prince George's County, "a person that is subjected to a discriminatory act prohibited by the county code may bring and maintain a civil action against the person that committed the alleged discriminatory act." Md. Code Ann., State Gov't § 20–1202(b). For purposes of this statute, however, "person" is defined as an "individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity." Md. Code Ann., State Gov't § 1–101(d). In *Washington Suburban Sanitary Commission v. Phillips*, 994 A.2d 411 (Md. 2010), the Maryland Court of Appeals stated that Maryland law has "long recognized that, in general, the term 'person' in a

statute does not include the State and its agencies and instrumentalities." *Id.* at 421 (collecting cases). Examining the predecessor statute to section 20–1202(b), the court held that the proper construction of "person" in this provision "excludes generally the State and its agencies and instrumentalities." *Id.* at 425. For this reason, the State cannot be sued for a violation of the PGCHRA, and Familia's claim against the State in Count 4 must be dismissed.

Familia counters that her cause of action is permitted because the Sheriff's Office is a hybrid state and local entity, and the State and the County were thus joint employers of Familia. She analogizes the Sheriff's Office to the Washington Suburban Sanitary Commission, which was found in *Phillips* to be a "hybrid entity which defies simple and definitive categorization as either a 'State' or 'local' agency." *Phillips*, 994 A.2d at 426. This argument misses the mark because in Count 5, Familia has not sued the Sheriff's Office but has instead sued the State and the County, neither of which defy categorization. While, as discussed above, a claim against the County under the PGCHRA could proceed if it can be established that the County is a joint employer of Familia, *see supra* part I.D, the State is not a "person" subject to suit for a violation of the PGCHRA. *See Phillips*, 994 A.2d at 421 (collecting cases). The Court will dismiss the claim in Count 4 against the State.

### B.    Statutory Immunity

The State Defendants also seek dismissal of the wrongful discharge claim in Count 5 against Sheriff High in his individual capacity on the ground that he is statutorily immune. Under the Maryland Tort Claims Act, "State personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article." Md. Code Ann., State Gov't § 12–105. Section 5–522, in turn, provides that state personnel are immune from liability in tort for an act or omission "that is within the scope of the public duties of the State personnel and is

made without malice or gross negligence." Md. Code Ann., Cts. & Jud. Proc. § 5–522(b). Sheriff High qualifies as "State personnel." Md. Code Ann., State Gov't § 12–101(a)(1)(6). The parties do not dispute that Sheriff High was acting within the scope of his duties but disagree on whether Familia has sufficiently alleged that he acted with malice or gross negligence.

Under Maryland law, malice is defined as "behavior 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Newell v. Runnels*, 967 A.2d 729, 763 (Md. 2009) (quoting *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007)). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* at 764 (quoting *Barbre*, 935 A.2d at 717).

At this stage in the proceedings, the Court finds that Sheriff High is not entitled to statutory immunity from the wrongful discharge claim because Familia has sufficiently alleged in the Amended Complaint that he acted with malice or gross negligence. Familia first asserts that Sheriff High played a direct role in the decisions to suspend and terminate her based on her PTSD diagnosis. Specifically, she alleges that her suspension letter stated that "By order of Sheriff Melvin High, you are hereby advised that effective immediately, you are hereby suspended from your duties with the Prince George's County Sheriff's Office." Am. Compl. ¶ 48. She also alleges that her termination letter was signed by Sheriff High and included within it false statements regarding her alleged inability to perform her duties. *Id.* ¶¶ 54-55. In this termination letter, Sheriff High stated that "it is my final decision" that Familia's employment be terminated. *Id.* ¶ 68.

Familia also asserts that in terminating her, Sheriff High "cit[ed] to a meeting that did not occur" and to "false allegations of 'negative performance' as a pretext for the firing." *Id.* ¶ 123.

22

Familia further alleges that Sheriff High terminated her "because of the stigma of PTSD and the perceived potential limitations . . . arbitrarily associated" with her condition. *Id.* She also states that Sheriff High acted "without seeking or conducting an independent medical examination" and "without obtaining any information about [Familia's] actual diagnosis and/or possible reasonable accommodations," allegations supported by the fact that she was terminated only three days after she revealed her PTSD diagnosis and requested an accommodation. *Id.* Then, after the termination, the Sheriff's Office and Sheriff High refused to provide Familia with a letter of good standing that would allow her to obtain alternative employment. These facts, taken together, sufficiently support the claim that Sheriff High acted with malice or, at a minimum, gross negligence by personally terminating Familia for improper reasons, based on false assertions, and without even gathering information upon which he could make a fair determination about whether Familia could still fulfill her duties with a reasonable accommodation. *See Newell*, 967 A.2d at 765 (denying summary judgment based on state statutory immunity where the defendant's decision to terminate the plaintiffs could be deemed to be grossly negligent in that it "reflected a conscious disregard for [plaintiffs'] rights as employees" based on evidence that the defendant was agitated by the plaintiffs' campaign activities and gave no firm reason for firing them).

Based on these allegations, Sheriff High is not entitled to statutory immunity from Familia's wrongful discharge claim at this stage of the proceedings. The State Defendants' Motion will therefore be denied as to the claim against Sheriff High in Count 5.

## CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART, in that it will be granted as to the wrongful discharge claim against the County in Count 5 and will be otherwise denied.  The State Defendants' Partial Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the PGCHRA claim against the State in Count 4 and will be otherwise denied.  A separate Order shall issue.


Date:    March 28, 2022

THEODORE D. CHUANG
United States District Judge